# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**MAUREEN DUPELL,**

      Plaintiff,

v.                                          CIVIL ACTION NO. 3:12-CV-6
                                                  (GROH)

**K. HOVNANIAN COMPANIES, LLC**
**and AETNA INSURANCE COMPANY,**

      Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

1. Introduction

On this day, the above-styled matter came before the Court for consideration of the Defendants' Motion to Strike and Partial Motion to Dismiss [Doc. 7] with regard to the Plaintiff's Complaint [Doc. 5]. In their Motion, the Defendants pray that the Court strike a Functional Capacity Evaluation attached as an exhibit to the Plaintiff's Complaint, and the Defendants furthermore pray that the Court dismiss K. Hovnanian Companies, LLC, as a party defendant to this case.

2. Factual Background

The Plaintiff alleges in her Complaint that she was an employee of K. Hovnanian Companies, LLC ("K-Hov") in Martinsburg, West Virginia, and as a result qualified for long-term disability ("LTD") benefits. The Plaintiff alleges that Aetna Insurance Company ("Aetna") "acted as the underwriter and claims administrator for the K. Hovnanian Companies, LLC's long-term disability plan including making the decision to deny Plaintiff's

long-term disability claim."

The Plaintiff alleges that she developed degenerative disk disease and a ruptured disk in 1991, for which she underwent surgery in 1992 consisting of a laminectomy and discectomy. According to the Plaintiff, although her leg pain initially improved after surgery, she has progressively suffered from lower back pain and left leg pain from her hip and her foot which has significantly worsened since her surgery in 1992, and because of the progression of the compression, she has also developed arthritic pain in her right hip.

The Plaintiff alleges that on October 30, 2004, an MRI examination of the Plaintiff's lumbar spine was conducted, which revealed, among other things, further degenerative disk disease. On December 22, 2005, the Plaintiff was found to be totally disabled by the Social Security Administration, finding that she had been under a disability since March 2, 2004.

In September 2005, the Plaintiff went to work part-time as a sales assistant for Dan Ryan Builders. Her Social Security Disability payments continued during her nine trial work months while Plaintiff allegedly "tested her ability to work." Her trial work period ended in June 2006. On March 20, 2006, the Plaintiff was hired by Defendant K-Hov as a sales consultant with a $14,000 annual base salary, plus commissions. The physical requirements of Plaintiff's job with K-Hov allegedly included being able to sit, stand, and drive without limitations, being able to work a minimum of eight to ten hours per day, being able to drive to Chantilly, Virginia every Monday to turn in contracts and attend meetings, being able to attend periodic training or meetings in Chantilly, Virginia, or Landover, Maryland, being able to unload large boxes of brochures and promotional items, and being able to interact with customers.

The Plaintiff alleges that while working for K-Hov, her medical conditions were exacerbated and worsened. She was allegedly diagnosed with "chronic pain versus fatigue and adrenal fatigue." The Plaintiff also allegedly suffers from fibromyalgia, hypothyroidism, sleep apnea, and depression.

The Plaintiff alleges that on or about September 27, 2007, she became totally disabled from her occupation as a real estate sales consultant for K-Hov. She applied for and was placed on short-term disability until April 30, 2008, under K-Hov's group plan. The Plaintiff was not entitled to Social Security Disability payments from October 2006 through September 2007 because of substantial work. The Plaintiff's Social Security Disability payments were reinstated by letter dated November 2, 2007, because she was no longer able to work.

On March 11, 2008, the Plaintiff applied for long-term disability. Pursuant to the application for long-term disability, the Plaintiff alleges that a Physician Statement was prepared by Dr. J. A. Burgess which directed that the Plaintiff could not lift, that the Plaintiff could not sit, stand, walk, or drive for more than thirty minutes at a time, and that a low-stress environment was preferred for the Plaintiff.

On March 26, 2008, the Plaintiff was approved for long-term disability and began receiving benefits pursuant to the plan. On February 17, 2009, an MRI of the Plaintiff's spine revealed further degeneration. On November 5, 2009, the Plaintiff underwent a "fluoroscopically guided left L5 dorsal ramus blockade," and an "S1, S2, and S3 lateral branch blockade" by Dr. Mayo Friedlis, who diagnosed the Plaintiff with: (1) left sacroilitis; (2) post laminectomy, lumbar; (3) left L5 radiculopathy; (4) multilevel lumbar disk disease with disk protrusion/disk osteophyte complexes/annular tearing; (5) congenital and acquired

lumbar spine stenosis; (6) lumbar facet arthropathy; (7) lumbar spondylosis; and (8) lumbar/gluteal myofascial dysfunction.

On January 20, 2010, as part of the Plaintiff's renewed application for long-term disability benefits, the Aetna Attending Physician Statement form was completed by Dr. Sylvia Cruz, D.O., Pain Management Specialist. Dr. Cruz listed the Plaintiff's diagnoses as lumbar spondylosis, lumbar radiculopathy, and chronic pain. Dr. Cruz opined that the Plaintiff had no ability to work.

On March 9, 2010, Dr. Lawrence Blumberg, M.D., was assigned to perform a Physician Review by Defendant Aetna. In his report, Dr. Blumberg included notes from a peer-to-peer consultation with Dr. Cruz on March 10, 2010. The Plaintiff asserts that Dr. Blumberg "mischaracterized his conversation with Dr. Cruz indicating Plaintiff could perform any occupational activities as long as she was allowed to change positions."

On March 30, 2010, the Plaintiff's application for long-term disability benefits was denied by the Defendants effective April 1, 2010. The Plaintiff appealed this denial.

According to the Plaintiff, upon reviewing the March 30, 2010 determination letter, Dr. Cruz sent a letter to Aetna Disability-Workability Appeals dated May 10, 2010, in which Dr. Cruz sought to clarify her March 10, 2010 peer-to-peer conversation with Dr. Blumberg. In her letter, Dr. Cruz noted that "as time has progressed [the Plaintiff's] functionality has significantly decreased since her disability determination, and she is not able to perform these functions as well as she did when she was determined to be disabled."

It was discovered in March 2010 that the Defendants failed to reduce Plaintiff's disability payments to take into consideration the Plaintiff's Social Security Disability payments. The Defendants allegedly demanded repayment of $43,905.24 in overpayment

within fifteen days. On April 28, 2010, the Plaintiff claims to have tendered to the Defendants a check in the amount $35,030.10, and to have reimbursed the Defendants for the remainder of the overpayment by donating her disability payments for the remainder of the balance.

According to the Plaintiff, she underwent a comprehensive and detailed independent medical evaluation on June 18, 2010 by Dr. Alex Ambroz. As part of her appeal, the Plaintiff submitted Dr. Ambroz's report of the evaluation. Dr. Ambroz concluded that "[a]s a result of her medical problems she is permanently and totally disabled . . . [s]he fully meets the terms of Aetna's permanent disability."

The Plaintiff alleges that on September 20, 2010, as part of another physician review performed by Defendant Aetna, Dr. Richard S. Kaplan spoke to Dr. Friedlis, a Pain Management Specialist. Dr. Kaplan's report indicated that "Dr. Friedlis reports that . . . [the Plaintiff] . . . would not have been able to work at all during the period under review." In a supplemental physician review dated October 6, 2010, Dr. Kaplan found that "a more quantitative validation of this claimant's functional abilities would certainly be appropriate . . . [t]here might reasonably be some difference in professional judgment regarding the exact level of restrictions/limitations at which this claimant is able to work . . . ."

The Plaintiff alleges that "[d]espite the findings of Plaintiff's treating physicians concerning Plaintiff's disabilities, and the recommendations of Aetna's physician reviewers, Aetna did not choose to obtain a functional capacity evaluation nor did it choose to have any of its physicians actually examine the Plaintiff."

On or about December 16, 2010, Defendant Aetna issued a final denial of the

Plaintiff's claim for long-term disability benefits.

On August 15, 2011, a functional capacity evaluation of the Plaintiff was performed by Tobi M. Smith, OTR/L. This functional capacity evaluation found that the Plaintiff "was not capable of performing work activities within the Sedentary physical demand level." The Plaintiff has attached this functional capacity evaluation to her Complaint as Exhibit 1 and seeks to have it considered by the Court.

### 3. Procedural History

The Plaintiff filed her Complaint [Doc. 5] on January 23, 2012. On February 14, 2012, the Defendants filed a Motion to Strike and Partial Motion to Dismiss [Doc. 7]. On February 29, 2012, the Plaintiff filed a Response in Opposition to the Defendants' Motion [Doc. 12], and on March 8, 2012, the Defendants filed a Reply to the Plaintiff's Response [Doc. 14]. The matter is now ripe for adjudication.

### 4. Standards of Review

A. <u>Motion to Strike</u>

Federal Rule of Civil Procedure 12(f) provides that:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (1) on its own; or
>
> (2) on motion made by a party, either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f). The standard upon which a motion to strike is measured places a substantial burden on the moving party. "A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." ***Clark v. Milam***, 152 F.R.D. 66, 70

(S.D.W.Va. 1993) (*citing* **First Financial Sav. Bank v. Am. Bankers Ins. Co.**, 783 F.Supp. 963, 966 (E.D.N.C. 1991); **United States v. Fairchild Indus., Inc.**, 766 F.Supp. 405, 408 (D.Md. 1991)). Generally, such motions are denied "unless the allegations attacked have no possible relation to the controversy and may prejudice the other party." **Steuart Inv. Co. v. Bauer Dredging Const. Co.**, 323 F.Supp. 907, 909 (D.Md. 1971).

B.   Motion to Dismiss

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true. **Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.**, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." **Id.** (*citing* **Ashcroft v. Iqbal**, 556 U.S. 662, 667, 129 S.Ct. 1937, 1949 (2009)). A court will decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." **Id.** (*citing* **Wahi v. Charleston Area Med. Ctr., Inc.**, 562 F.3d 599, 615 n. 26 (4th Cir. 2009)).

5.   Analysis

A.   Motion to Strike

The Defendants argue, first and foremost, that the administrator's denial of the Plaintiff's claim in the case *sub judice* is subject to an abuse of discretion standard of review. The Plaintiff, on the other hand, argues that review should be *de novo*. The Court must, as an initial step, determine the applicable standard of review, which will, in turn, be determinative of the issue of whether or not the Court may consider evidence which was not before the claims administrator at the time that the claims administrator rendered its

7

decision.

The United States Court of Appeals for the Fourth Circuit has held that:

> [A]lthough it may be appropriate for a court conducting a *de novo* review of a plan administrator's action to consider evidence that was not taken into account by the administrator, the contrary approach should be followed when conducting a review under . . . the abuse of discretion standard.

*Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 125 (4th Cir. 1994). Thus,

> [A] court reviewing the denial of disability benefits under ERISA initially must decide whether a benefit plan's language grants the administrator or fiduciary discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion.

*Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir. 2002).

"If a plan does not clearly grant discretion, the standard of review is *de novo*." *Id.* at 269. "Any ambiguity in an ERISA plan 'is construed against the drafter of the plan, and it is construed in accordance with the reasonable expectations of the insured.'" *Id.* (*quoting Bynum v. Cigna Healthcare, Inc.,* 287 F.3d 305, 313-14 (4th Cir. 2002)).

The Plaintiff argues that after the December 16, 2010 final denial of the Plaintiff's long-term disability application by the Defendants, the Plaintiff, by letter dated February 1, 2011, requested, *inter alia*, a complete and certified copy of the plan applicable to the Plaintiff's disability claim. The Plaintiff alleges that Aetna then sent her what was referred to as "a complete copy of the Long Term Disability contract . . . for [the Plaintiff's] employer, K. Hovnanian." The Plaintiff argues that there is no grant of discretionary authority contained within the plan which Aetna sent to her ("the Group Plan"), nor in the Summary

8

Plan Description ("SPD") produced by K-Hov, and thus review of the denial of her claim should be *de novo.* With regard to the "Group Accident and Health Insurance Policy" ("the Group Policy") between K-Hov and Aetna, which is attached as Exhibit B to the Defendants' Motion to Strike, the Plaintiff argues that this document was never provided to her during her employment, nor was it produced when the Plaintiff's counsel requested a copy of the plan. The Plaintiff argues that if the Group Policy is, in fact, part of the Long-Term Disability Contract, then Aetna violated 29 U.S.C. § 1024(b)(4) by failing, "upon written request of any participant or beneficiary, [to] furnish a copy of the latest updated summary plan description . . . contract, or other instruments under which the plan is established or operated." The Plaintiff argues that she has been prejudiced by undergoing a Functional Capacity Evaluation based on the belief that the standard of review in this case would be *de novo*.

The Defendants, on the other hand, argue that the Plaintiff cannot make any showing that the Summary Plan Description and other documents provided to her by K-Hov and Aetna conflict with the Group Policy which the Defendants cite in their Motion to Strike.

In ***Martin v. Blue Cross & Blue Shield of Virginia, Inc.***, the United States Court of Appeals for the Fourth Circuit held that "we find no conflict between the absence of discretionary language in [an] SPD and its presence in [a] Plan . . . [v]esting the plan administrator with discretion in making coverage decisions simply does not conflict with the SPD's silence on the matter." ***Martin***, 115 F.3d 1201, 1205 (4th Cir. 1997), *abrogated on other grounds by* ***Hardt v. Reliance Standard Life Ins. Co.***, 130 S. Ct. 2149 (2010) (*see* ***Williams v. Metropolitan Life Ins. Co.***, 609 F.3d 622, 634 (4th Cir. 2010)).

The United States District Court for the Western District of North Carolina reached an identical conclusion in a case involving an Aetna group policy in ***Worsley v. Aetna Life Ins. Co.***, where the court held:

> [Plaintiff] argues that the SPD is silent on Aetna's discretion, and that only the Group Policy and Administrative Information Booklet ("AIB") contain language granting such discretionary authority to Aetna. From here, [plaintiff] asserts that since Aetna maintains that the SPD's terms control in the case of a conflict, and the SPD is allegedly silent on discretion, the Plan does not grant Aetna the discretionary authority that would trigger abuse of discretion review.
>
> This argument fails. The Group Policy and AIB contain express grants of discretion to Aetna, and the SPD does not conflict with these express grants. Rather, the SPD contains multiple references to Aetna's authority to make benefit determinations, and these references are consistent with the grants of discretion in the Group Policy and AIB. For instance, the SPD states that eligibility for long term disability benefits are "determined by Aetna" and that benefits begin only when "Aetna certifies that you are disabled." The Court thus finds that no conflict exists between the SPD on the one hand, and the Group Policy and AIB on the other, regarding Aetna's discretion under the Plan. The Court reviews Aetna's denial of benefits for abuse of discretion.

***Worsley***, 780 F.Supp.2d 397, 404 (W.D.N.C. 2011).

In the case *sub judice*, the Plaintiff, by her own admission, received from Aetna a copy of the Group Plan. Page 1 of this document states that "[t]his Plan is underwritten by the Aetna Life Insurance Company, of Hartford, Connecticut." Page 3 states that:

> Your period of disability ends on the first to occur of:
>
> (1) The date Aetna finds you are no longer disabled or the date you fail to furnish proof that you are disabled;
>
> (2) The date Aetna finds you have withheld information which indicates you are performing, or capable of performing, the

duties of a reasonable occupation; . . .

Page 5 states that:

> **How and When to Report Your Claim**
> You are required to submit a claim to Aetna by following the procedures chosen by your Employer. If the procedure requires that claim forms be submitted, they may be obtained at your place of employment or from Aetna. Your claim must give proof of the nature and extent of the loss. Aetna may require copies of documents to support your claim, including data about any other income benefits. You must also provide Aetna with authorizations to allow it to investigate your claim and your eligibility for and the amount of other income benefits.

The Plaintiff also, by her own admission, received from K-Hov a copy of the Summary Plan Description applicable to the Plaintiff's claim. Page 5 of that document provides that "[t]he insurance described in this Booklet-Certificate will be provided under Aetna Life Insurance Company policy form GR-29." A subsequent unnumbered page in that same document provides that "[t]he plan of benefits described in the Booklet-Certificate is underwritten by . . . Aetna Life Insurance Company," while yet another subsequent unnumbered page in the same document provides that:

> The following information is provided to you in accordance with the Employee Retirement Income Security Act of 1974 (ERISA) . . .
>
> **Type of Administration:**
> Group Insurance Policy with:
> Aetna Life Insurance Company
> . . .
> **Plan Administrator:**
> K. Hovnanian Companies, LLC . . . .

The Group Policy, which the Plaintiff claims she did not receive, provides on page 9190 that:

11

**ERISA Matters**
Under Section 503 of Title I of the Employee Retirement Income Security Act of 1974, as amended (ERISA), Aetna is a fiduciary. It has complete authority to review all denied claims for benefits under this policy. In exercising such fiduciary responsibility, Aetna shall have discretionary authority to:

> determine whether and to what extent employees and beneficiaries are entitled to benefits; and
>
> construe any disputed or doubtful terms of this policy.

Aetna shall be deemed to have properly exercised such authority. It must not abuse its discretion by acting arbitrarily and capriciously.

From the Court's review, these documents are all perfectly consistent with each other. Just as in **Worsley**, "the SPD contains multiple references to Aetna's authority to make benefit determinations, and these references are consistent with the grants of discretion in the Group Policy . . . ." **Id.** at 404.

The Plaintiff distinguishes the instant case from **Martin** by arguing that Aetna did not produce a Summary Plan Description, but rather produced a document it referred to as the "Long-Term Disability Contract," which stated that "[t]he benefits and main points of the group contract for persons covered under this Plan are set forth in this Booklet." The Plaintiff also argues that the Summary Plan Description in this case was produced by K-Hov, not Aetna, and likewise does not contain any reference to discretionary review.

The Court rejects this argument. Both the Summary Plan Description and the Group Plan make multiple references to Aetna's authority to make benefit determinations, and in fact, the Summary Plan Description clearly states that "[t]he insurance described in this Booklet-Certificate will be provided under Aetna Life Insurance Company policy form GR-

29." Aetna Life Insurance Company policy form GR-29, in turn, is the Group Policy which the Plaintiff claims not to have received a copy of.

Furthermore, the Court rejects the Plaintiff's argument that she has been prejudiced by undergoing a Functional Capacity Evaluation on the mistaken assumption that the applicable standard of review would be *de novo*. Even if *de novo* review were applicable, the decision of whether or not to allow additional evidence to be presented beyond that which was before the plan administrator is always discretionary on the part of the Court. *See, e.g.,* **Quesinberry v. Life Ins. Co. of North America**, 987 F.2d 1017, 1025 (4th Cir. 1993) ("we adopt a scope of review that permits the district court in its discretion to allow evidence that was not before the plan administrator . . . only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision."). The Plaintiff, therefore, could not have reasonably anticipated that the Court would admit additional evidence in this case, and hence there was no detrimental reliance or prejudice.

Thus, the Court **FINDS** that Aetna did reserve discretionary authority to determine eligibility for benefits, and, such being the case, the applicable standard of review for this matter is an abuse of discretion standard. Because abuse of discretion is the applicable standard, the Court may not review evidence which was not before Aetna at the time it made its decision with regard to the Plaintiff's claim, and the Defendants' Motion to Strike is accordingly **GRANTED**.

B. Motion to Dismiss

K-Hov argues that inasmuch as the Plaintiff can make no showing of a colorable claim against K-Hov, K-Hov should be dismissed as a party defendant to this case. According to K-Hov, Defendant Aetna was the claims administrator, and as such had sole discretion to approve or deny the Plaintiff's claim. K-Hov asserts that the Plaintiff has made no showing that that K-Hov controlled or influenced the administration of the plan, and accordingly argues that Aetna is the only proper defendant to this action.

The Plaintiff, in response, first observes that K-Hov was disclosed as the plan administrator in the Summary Plan Description, and then, citing ***U.S. Steel Mining Co., Inc. v. District 17, United Mine Workers of America***, 897 F.2d 149, 152 (4th Cir. 1990), goes on to argue that "[a]s the plan administrator, [K-Hov] is clearly a fiduciary." As a fiduciary, the Plaintiff argues that K-Hov is a proper party to this case.

K-Hov concedes that it is, in certain contexts, a fiduciary in its role as a Plan Sponsor and Plan Administrator. Nevertheless, K-Hov argues that it was not a fiduciary with regard to the Plaintiff's benefits claim.

Under ERISA,

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

14

"The same entity may function as an ERISA fiduciary in some contexts but not in others." **Darcangelo v. Verizon Communications, Inc.,** 292 F.3d 181, 192 (4th Cir. 2002). "An entity involved with a benefit plan is a fiduciary 'only as to the activities which bring the [entity] within the definition' of fiduciary under ERISA." **Id.** (*citing* **Custer v. Sweeney,** 89 F.3d 1156, 1161-62 (4th Cir. 1996)).

"An employer may not be named a defendant in an ERISA action unless the plaintiff shows the employer controlled or influenced the administration of the plan." **Marcum v. Zimmer,** 887 F.Supp. 891, 894 (S.D.W.Va. 1995) (collecting cases). "The party that controls administration of an employee benefits plan is the only proper defendant in an action concerning benefits under ERISA." **Sawyer v. Potash Corporation of Saskatchewan,** 417 F.Supp.2d 730, 737 (E.D.N.C. 2006). "In determining whether a defendant is properly named in an ERISA benefits action, a court must consider whether the defendant has influenced the handling of the plaintiff's claim." **Id.** *See also* **Gluth v. Wal-Mart Stores, Inc.,** 1997 WL 368625 (4th Cir. 1997) (holding that "the district court erred in granting [plaintiff's] motion, because the Trust, as the funding mechanism for the Plan with no control over its administration, is not a proper defendant in this action."(citation omitted)); **Chaffin v. Nisource, Inc.,** 703 F.Supp. 579, 582-83 (S.D.W.Va. 2010) ("a claimant's employer is not a proper defendant if the employer exercised no control over the administration of the plan, even if the employer was listed as plan administrator in the summary of benefits" (*quoting* **Williams v. UNUM Life Ins. Co. of America,** 250 F.Supp.2d 641, 645 (E.D.Va. 2003))).

In the case *sub judice*, the Plaintiff has not presented any evidence that K-Hov in

any way controlled or influenced Aetna's decision-making with regard to claims. To the contrary, it appears that Aetna exercised sole discretion with regard to the approval or denial of the Plaintiff's claim. The simple fact that K-Hov was the plan administrator is not enough to render it a fiduciary with regard to the Plaintiff's claim, and the Defendants' Motion to Dismiss K-Hov as a party defendant to this action is accordingly **GRANTED**.

### 6. Conclusion

For the reasons stated above, this Court hereby **GRANTS** the Defendants' Motion to Strike **[Doc. 7]**. The Court further **GRANTS** the Defendants' Partial Motion to Dismiss **[Doc. 7]**, and Defendant K. Hovnanian Companies, LLC, is hereby **DISMISSED** as a party defendant to this action.

As a final matter, the Court's foregoing determination that an abuse of discretion standard of review is the applicable standard of review in this case effectively **MOOTS** the Plaintiff's Motion to Consider Functional Capacity Evaluation as Part of *De Novo* Review **[Doc. 15]**, as the Plaintiff's argument in that Motion presupposes that *de novo* review would be the applicable standard.

It is so **ORDERED.**

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** May 18, 2012.

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE